## Shaw's Appeal.

*Waiver of inquisition to condemn real estate not incompatible with claim under Exemption Law.*

A waiver by a defendant of inquisition to condemn real estate levied, and an agreement that the sheriff may sell on the *fieri facias,* may be joined with a demand for the benefit of the Act of Assembly exempting property to the value of $300 from levy and sale on execution ; they are not inconsistent, and the existence of the former is no reason for refusing to allow the other.

APPEAL from the Common Pleas of *Clearfield county.*

This was an appeal by A. B. Shaw from the decree of the court below on the distribution of the proceeds of the sheriff's sale of the real estate of Ellis R. Livergood. The case was this :—

The money in court was $500, the proceeds of sale of real estate of Ellis R. Livergood, under two writs of *fieri facias,* to June Term 1863—the former in favour of A. B. Shaw for $983.58, and the latter in favour of Hugh Orr for $118. The sale was made on the 16th day of June, A. D. 1863—no *vend. ex.* having

13 WR.—12

[Shaw's Appeal.]

been issued. The judgment in favour of A. B. Shaw for $983.58, was the first lien upon the property sold, and the plaintiff in that judgment claimed the entire proceeds of the sale.

The defendant claimed that $300 should be allowed to him, and between these two claimants the contest arose.

Livergood owned no other real estate in Clearfield county. For some months prior to the sale of his realty he had avowed his attention of removing to the West, and it appeared by testimony, that he had sold at private sale in the spring of 1863, numerous articles of personal property, amounting, in the whole, to the sum of $200, or thereabouts.

One of these articles was a bay mare, for which he had given the judgment-note to Orr. On the 27th day of May, A. D. 1863, a vendue was held at the house of Livergood, which had been advertised as the vendue of Jane Livergood, wife of defendant, and Washington Livergood, his half-brother, who resided with him, and accompanied him to the West. The proceeds of that vendue amounted to about $150. All of the articles sold had been in the possession of defendant, and used by him, before and up to the day of sale, and it appeared that the defendant received a part of the proceeds of sale. It was also in proof that the defendant had said he had about $1400 in cash to take with him to the West.

The family left the premises on the day after the vendue, and on the 3d of June 1863, the defendant left the county with his family, and went to Iowa, where he now resides.

The *fi. fa.* No. 96, June Term 1863, in favour of A. B. Shaw, for $983.58, was lodged in the sheriff's office on the 19th day of May 1863.

On that day the defendant handed the sheriff a paper bearing date 19th day of May 1863, in which he waived the right of inquisition, and agreed that the sheriff might sell upon *fi. fa.* the same as though inquisition had been held, but did not relinquish, but expressly claimed the benefits of the laws of this Commonwealth allowing him $300 worth of property, free and exempt from all executions the sheriff may have in his hands, and notified the sheriff to have appraised and set out to him, out of his real estate, $300 worth of property, before making any sale, and in the manner provided by law.

The *fi. fa.* in favour of Hugh Orr for $118 was lodged in the sheriff's office on the 26th day of May 1863, and a similar paper, dated 26th May 1863, was handed to the sheriff by defendant.

On this writ return was made that the property could not be divided without injuring the sale of the balance.

The judgment-creditors resisted the claim of the defendant for the $300, on the ground:—

First. That the defendant had received $300 out of his per-

sonalty, was an insolvent debtor committing a fraud upon his creditors, and was out of the state at the day of the sale.

Second. That the claim made for the $300 being connected with and given at the time of waiver of inquisition and agreement to sell upon the *fi. fa.*, was irregular, and did not authorize the sheriff to value the property.

The auditor decided that a waiver of a right of inquisition upon certain described premises, connected with a claim for an appraisement, and setting out of premises from the same land to the value of $300, were in their very terms contradictory, and could not stand together. That the waiver of inquisition was valid, and the claim for appraisement irregular and void. That in all proceedings of this character a term must intervene between the appraisement and the sale, and that in proceedings not expressly saved by the terms of the Act of 1849, a writ of *vend. ex.* must issue to make the sale.

He therefore distributed the money in court without regard to the defendant's claim for exemption.

To this report exceptions were filed, on hearing which, the court below reversed so much of the report as rejected the defendant's claim for the $300 under the Exemption Law, awarded that sum to him, and distributed the balance to Shaw, charging him with the costs of the audit, which was the error assigned here by the appellee.

*W. A. Wallace*, for appellant, insisted that the defendant was not entitled to the benefit of the Exemption Law, because,

1. He had already received $300 worth of personalty, and held it in fraud of his creditors.

2. He was an absconding insolvent debtor out of the state when his real estate was sold: citing 2 Wright 190, 475.

3. The claim for $300, and the waiver of inquisition, are contradictory, and cannot stand together.

4. The letter of the Act of 1849 will be destroyed, because a term does not intervene before sale.

5. The spirit of the law intends the defendant to get property: by this proceeding he gets money.

6. If the appraisement resulted in a division, it is clear he could not sell upon the *fi. fa.*

7. A waiver of inquisition precludes his right to an appraisement.

8. The right given by the Act of 1849 must be strictly pursued by defendant, and the sheriff or the lien-creditor is not deprived of the proceeds: citing 4 Harris 301.

[Shaw's Appeal.]

*R. J. Wallace* and *J. B. McEnally*, for defendant, argued

1. That where a debtor has fraudulently contracted a debt or conceals his property or removes it to defraud his creditors, there is a law, viz.: Act of 12th July 1842, under which he may be arrested and this question tested; and if Shaw wished to proceed against Livergood on such grounds, he should have taken the course provided by law in such cases. But where a levy is made on an ordinary *fi. fa.* the defendant can lose no right in regard to his $300 in the property levied on, unless by falsely denying his ownership, which must be made to the officer of the law when he comes to execute his writ. But there was no such denial here. Even where such denial is made to the sheriff, it is necessary that the ownership to the property be ascertained by trial in a legal manner by a jury, in order to tell whether the denial was false. The first objection, therefore, fails in this case.

2. As a non-resident debtor, he could be deprived of the $300 only by a writ of foreign attachment in the hands of sheriff or an execution thereon, and not by *fi. fa.* or executions on old judgments, even if it could be shown that defendant was subject to a writ of foreign attachment at the time the claim was made: 2 Casey 353. But he was not a non-resident when claim was made and the property sold, and not therefore liable to foreign attachment: 12 Casey 420.

3. The holding of an inquisition is not necessary to enable a debtor to have the benefit of the $300 law; and the waiver of it cannot, for any good reason, destroy or affect that right. The rights of the debtor to $300 are ascertained in the same way, whether inquisition is held or not.

4. Whether the sale shall go on or a term shall intervene before sale, depends upon what the plaintiff in the execution directs, and what the sheriff does: 5 Casey 362. The right of the debtor or defendant cannot be affected by what the plaintiff and sheriff do or fail to do in this respect. The delay of an intervening term is intended for the benefit of creditors. If they were injured, they might have objected to the sale, and demanded delay. But none did so; and Shaw is the very creditor who had the sale made without allowing a term to intervene, and cannot now claim to take the $300 for himself, and deny the right of Livergood because the sale was so made. See also Yelverton *v.* Burton, 2 Casey 353.

The opinion of the court was delivered by

Thompson, J.—The Act of 6th March 1820 authorizes the owner of real estate, levied upon, to waive inquisition and consent to a sale on the *fi. fa.*, and this provision is certainly not in terms changed by the Act of 29th April 1849, or any preceding

[Shaw's Appeal.]

Act. The last-mentioned Act provides for the case of an adversary proceeding throughout, in which is an appraisement and return, and then a *venditioni.* But it does not touch the case where a debtor, to save costs, waives the inquisition and *venditioni* and claims his exemption. It has no necessary connection with the inquisition. The object of that is to ascertain whether the property must or must not be sold. But that is settled by a waiver and assent to the sale. I cannot see why the appraisement for the debtor may not be made, as it always is, on the *fi. fa.*, and be followed by a sale, especially where, as in this case, no division or appraisement took place, the appraisers reporting that it could not take place whithout prejudice to, or spoiling, the premises levied on. The appellant seems to have staked his case on this cast, below, and he has lost. The auditor decided the point with him, and the court below against him ; and the latter, we think, was right in holding that it was no reason against the allowance of the exemption that there had been a waiver of inquisition and sale on a *fi. fa.*

Can we overlook other matters alleged against the debtor's claim below but not passed upon by the auditor, the principal one of which was that he had fraudulently concealed property and money to more than the amount of the exemption ? The court below might have sent back the case to the auditor on this point after overruling him in the matter referred to, but did not. We may now, however, as the case is before us on appeal, look into the whole case, and if we think the decree wrong for anything in the facts or law, correct or send it back. The auditor did not pass upon the question of fraud, nor do I suppose the court did. The creditors have a right to hear something about this somewhere. Let us see then if there be anything that needs correction by reason of the omission.

There is testimony to show that the debtor had some personal property and declared he had considerable money, some $1400, before or about the time the *fi. fa.* issued. But it does not appear that the appellant or any other creditor made any attempt to levy on the property, or to proceed as provided by law, to compel him to account for any money he might have which he refused to apply to his debts. Nor was there any evidence of concealment or transfer of property to avoid levies upon it. I see nothing, therefore, to prevent his demand of the exemption when the levy was made on the real estate, as it is likely he would have done if there had been a levy on personal property. We have never yet held that because a debtor has other property beside that levied on, he may not claim the exemption under the levy. It is only where he has fraudulently carried away or concealed or denied property, to avoid its liability for his debts, that it has been held that this may be set up against his claim to

exemption. In Strouse's Executors *v.* Butler, 2 Wright 190, it was said, " but if he (the debtor) equivocate and dissemble— denies the ownership of that which he cannot hide, and embarrasses the officers of the law in the execution of legal duties, he forfeits, not only his self-respect, but his hold upon the exemption provided for honest debtors." Although the debtor in this case left the country, yet he did it openly—spoke of it freely— made a vendue and sold off some property of no great value, and concealed nothing so far as the evidence shows. There was nothing like fraud proved against him when the exemption was claimed, nor did he leave for a considerable period of time thereafter. The auditor finds that the proceeds of the vendue amounted to only $150, a part of which he received, and "that it was proved by two citizens that at some time before leaving to go West he said he had $1400." He does not find this to be true ; nor do I suppose the creditors believed it, or they would have put themselves in the way of looking after it. We do not see enough in the testimony to induce us to reverse the decree on the ground of fraud, or that he concealed or fraudulently carried off any property. As there is nothing else necessary to be noticed in the case, the decree is affirmed at the costs of the appellant.